## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KELLY JEAN GRIFFITH,

        Plaintiff,

    v.

KILOLO KIJAKAZI,

        Defendant.

CIVIL ACTION NO. 3:22-CV-00401

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Kelly Jean Griffith ("Griffith") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). On March 24, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 6). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

### I.    BACKGROUND AND PROCEDURAL HISTORY

On November 6, 2019, Griffith protectively filed an application for Title II disability insurance benefits, claiming disability beginning May 1, 2014. (Doc. 9-5, at 2). The Social Security Administration ("SSA") initially denied her application on February 26, 2020, and upon reconsideration on April 30, 2020. (Doc. 9-2, at 13). On May 15, 2020, Griffith filed a request for a hearing which Administrative Law Judge ("ALJ") Jarrod Tranguch held on August 18, 2020. (Doc. 9-2, at 56). At the hearing, Griffith amended her alleged onset date to April 20, 2017. (Doc. 9-2, at 14). In a written opinion dated December 16, 2020, the ALJ determined that Griffith "was not under a disability, as defined in the Social Security Act, at

any time from May 1, 2014, the alleged onset date, through December 31, 2017, the date last insured," and therefore not entitled to benefits under Title II. (Doc. 9-2, at 10-26). On January 24, 2022, the Appeals Council denied Griffith's request for review. (Doc. 9-2, at 2).

On March 17, 2022, Griffith filed the instant complaint. (Doc. 1). The Commissioner responded on May 19, 2022, providing an answer and the requisite transcripts from Griffith's disability proceedings. (Doc. 8; Doc. 9). The parties then filed their respective briefs, with Griffith raising three bases for reversal or remand. (Doc. 10; Doc. 16).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration,

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being

supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Griffith was disabled, but whether the Commissioner's determination that Griffith was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III.   **THE ALJ'S DECISION**

In his written decision, the ALJ determined that Griffith "was not under a disability, as defined in the Social Security Act, at any time from May 4, 2014, the alleged onset date, through December 31, 2017, the date last insured." (Doc. 9-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At the outset, the ALJ determined that Griffith last met the insured status requirements of the Social Security Act through on December 31,

2017. (Doc. 9-2, at 16).

A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1520(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Griffith "did not engaged in substantial gainful activity during the period from her amended alleged onset date of April 20, 2017 through her date last insured on December 31, 2017." (Doc. 9-2, at 16). Thus, the ALJ's analysis proceeded to step two.

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step. Here, the ALJ concluded that Griffith had the following severe impairments: "degenerative disc disease of the lumbar spine; COPD (chronic obstructive pulmonary disease); post-traumatic stress disorder; borderline personality disorder; and depressive disorder." (Doc. 9-2, at 16). In addition, the ALJ determined that

5

Griffith had the following non-severe impairments: "colon mass (status-post colectomy), dyslipidemia, GERD (gastroesophageal reflux disease), TMJ (temporomandibular joint) disorders and headaches." (Doc. 9-2, at 16).

C.   STEP THREE

At step three, the ALJ must determine whether an impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Griffith's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 9-2, at 17). The ALJ considered the listings under section 1.04 (Disorders of the spine); 12.04 (Depressive, bipolar and related disorders); 12.08 (Personality and impulse-control disorders); and 12.15 (Trauma- and stressor-related disorders). (Doc. 9-2, at 17-18).

D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental

6

impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, the ALJ found that while Griffith's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 9-2, at 20). The ALJ concluded that Griffith has the RFC "to perform light work as defined in 20 CFR 404.1567(b)," subject to the following non-exertional limitations:

> [Griffith] can occasionally balance, stoop, kneel, crouch, use ramps and climb stairs. She must avoid crawling and climbing on ladders, ropes or scaffolding. She can tolerate occasional exposure to vibrations and potential pulmonary and respiratory irritants such as strong fumes, noxious odors, concentrated dust and gasses, and work environments with poor ventilation. [Griffith] should avoid wet or slippery conditions and avoid workplace hazards such as unprotected heights and dangerous, moving machinery. [Griffith] can perform jobs that would take no more than 30 days of training to learn with a specific vocational preparation level of two or less, which are generally classified as unskilled. She can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting.

(Doc. 9-2, at 19).

E.   STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past

relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ found that through the date last insured, Griffith was unable to perform any past relevant work. (Doc. 9-2, at 25). The ALJ noted that Griffith had past relevant work as a licensed practical nurse, but the requirements exceeded Griffith's RFC. (Doc. 9-2, at 25). Thus, the ALJ proceeded to step five of the sequential analysis.

F.   STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Griffith was 50 years old on the date last insured, which is defined as a younger individual age 18-49, with at least a high school education. (Doc. 9-2, at 25). Considering Griffith's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Griffith can perform. (Doc. 9-2, at 25). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Griffith could perform the requirements of occupations such as a (1) rental clerk; (2) office helper; and (3) sorter, which are occupations with open positions ranging from 131,870 to 230,670 nationally. (Doc. 9-2,

at 26). Accordingly, the ALJ determined that Griffith was not under a disability during the relevant period and denied her application for benefits. (Doc. 9-2, at 26).

IV. **DISCUSSION**

On appeal, Griffith advances three bases to argue that the decision of the ALJ is not supported by substantial evidence. (Doc. 10). First, Griffith argues the ALJ erroneously determined that he was insured for disability benefits through December 31, 2017. (Doc. 10, at 4). Second, Griffith avers that the ALJ failed to find her Chiari malformation and emphysema as issues that affected her prior to the last insured date. (Doc. 10, at 5-8). Third, Griffith contends the ALJ erroneously discounted the opinion of her treating physician, Charles V. Ackley, D.O. ("Dr. Ackley"). (Doc. 10, at 9-10). In response, the Commissioner maintains that the ALJ's decision was supported by substantial evidence and that the Court should affirm it. (Doc. 16, at 20).

A. THE ALJ CORRECTLY DETERMINED THAT GRIFFITH WAS INSURED FOR DISABILITY BENEFITS THROUGH DECEMBER 31, 2017.

First, Griffith argues that the Court should remand this case because of a typographical error on page 2 of the ALJ's decision. (Doc. 10, at 4). Specifically, Griffith contends "[w]here there is an internal inconsistency in the decision of the [ALJ] finding both that [Griffith]'s date of last insured was December 31, 2000, and alternatively, also finding that [Griffith]'s date of last insured was December 31, 2017, . . . the Decision begs for a remand for clarification to determine the correct date last insured which impacts ever issue of the Decision entered in this case." (Doc. 10, at 4). In opposition, the Commissioner maintains the incorrect reference to December 31, 2000, "is no more than a scrivener's error, when viewed in the context of the decision, and is a harmless error." (Doc. 16, at 13).

This Court has previously found that a typographical error is a harmless, immaterial, and irrelevant error, and should be discarded if it is immaterial to the case. *Madison v. Astrue*, No. 3:CV-07-364, 2008 WL 2962337, at *6 (M.D. Pa. Jul. 29, 2008) (noting that the error was harmless, immaterial, and irrelevant because the ALJ moved on to step five and found that plaintiff could perform other work in the national economy).

In the instant case, the ALJ stated in the procedural history of his decision:

[Griffith] was issued an unfavorable opinion by [ALJ] Therese A. Hardiman on her application for a period of disability and disability insurance benefits on April 19, 2017, [Griffith] was found not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through *December 31, 2000,* the date last insured.

(Doc. 9-2, at 14).

The Commissioner contends that this is a typographical error because "despite the single incorrect reference to December 31, 2000, . . . [Griffith] was advised that her insured status ended on December 31, 2017, during the application process, in notices before the hearing, during the hearing, and in the decision itself, multiple times." (Doc. 16, at 13). For example, like the current ALJ's decision, the prior ALJ's decision found that Griffith was fully insured for disability insurance benefits purposes through December 31, 2017. (Doc. 9-2, at 16; Doc. 9-3, at 7). Griffith's last insured date, December 31, 2017, also appears on Griffith's Earnings Record, in the Notice of Hearing, and in the body of the ALJ's decision. (Doc. 9-2, at 14, 16, 20, 26, 33, 38; Doc. 9-5, at 7). The Notice of Disapproved Claim and the Notice of Reconsideration advised Griffith: "We have determined your condition was not disabling on any date through December 31, 2017, when you were last insured for disability benefits." (Doc. 9-4, at 2, 9). At the onset of the hearing, the ALJ stated that Griffith's date of last insured

was December 31, 2017, and counsel for Griffith acknowledged that the date last insured was December 31, 2017. (Doc. 9-2, at 58, 64-65).

The Court finds that the ALJ's decision contained a typographical error; however, finding this typographical error does not change the outcome of this case, the Court concludes that the error is harmless. *See Madison*, 2008 WL 2962337, at *6; *Johnson v. Comm'r of Soc. Sec.*, No. 3:20-CV-00189, 2021 WL 3033858, at *4 n.2 (M.D. Pa. July 19, 2021) (finding that ALJ's typographical error in RFC is harmless). Accordingly, Griffith's first argument for remand lacks merit.

### B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION OF GRIFFITH'S CHIARI MALFORMATION AND EMPYEMA.

Next, Griffith argues that the ALJ failed to find her Chiari malformation[2] and emphysema as issues that affected her prior to the date last insured because the Veterans Administration hospital records show that he had "substantial symptoms" related to these disabilities, including intermittent headaches, numbness of her arms, loss of balance and vomiting, before December 31, 2017. (Doc. 10, at 5). Griffith argues the ALJ "failed to comply with SSR 03-02p in evaluating the severity of [Griffith]'s Chiari Malformation prior to the date last insured and entered a conclusory opinion that [Griffith] was not diagnosed with Chiari Malformation by that date even though [Griffith] did exhibit the symptoms of this

---

[2] "Chiari malformations are structural defects in the base of the skull and cerebellum, the part of the brain that controls balance." *Chiari Malformation Fact Sheet*, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/disorders/patient-caregiver-education/fact-sheets/chiari-malformation-fact-sheet (last visited November 9, 2022). There are four types. Type 1 is the least severe, and "happens when the lower part of the cerebellum (called the cerebellar tonsils) extends into the foramen magnum." Throughout the record, it appears documented both as Chiari 1 malformation, with the number, as well as Chiari I malformation, with the Roman numeral. (Doc. 9-7, at 604, 673).

condition." (Doc. 10, at 8). In addition, Griffith contends reversal is warranted because the ALJ failed to develop the record to determine what limitations he would have due to Chiari malformation symptoms prior to an official diagnosis and decompression surgery. (Doc. 10, at 8). In opposition, the Commissioner maintains Griffith did not meet her burden of showing that COPD and Chiari malformation limited her ability to work while she was still insured. (Doc. 16, at 14).

Griffith has not made any argument nor pointed to any portion of the record to indicate that the ALJ's conclusion with respect to the persistent or limiting effects was in error. In summarizing Griffith's testimony, the ALJ noted that she testified to having intermittent headaches, hospitalizations, and asthma attacks. (Doc. 9-2, at 16-18). At step two of the sequential process, the ALJ explained that Griffith was diagnosed with Chiari malformation after the date last insured, however, the ALJ noted that "[d]uring the relevant period, although there was evidence of intermittent headaches, rated mild in severity, reportedly lasting several weeks, there were no other signs or symptoms of Chiari Malformation and there was no diagnosis of this condition until well after the date last insured." (Doc. 9-2, at 17). Therefore, the ALJ concluded that Chiari malformation is not a medically determinable impairment during the relevant period. (Doc. 9-2, at 17). An error may be deemed harmless where the ALJ considered the established functional limitations when the inquiry proceeded beyond step two. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Therefore, because Griffith does not point to any functional limitations related to the emphysema and Chiari malformation, other than the headaches and cognitive issues recognized, any error related to the Chiari malformation itself would be harmless. *See Bennick v. Berryhill*, No. 3:16-

12

CV-2391, 2017 WL 2957870, at *10 (M.D. Pa. July 11, 2017). Griffith has not shown that any alleged step two error would be harmful, she has not shown that remand is required for reconsideration of the categorization of Griffith's Chiari malformation and emphysema. *See Rutherford*, 399 F.3d at 553.

Nevertheless, the Court finds that substantial evidence supports the ALJ's thorough discussion of medical records related to Chiari malformation and emphysema in crafting the RFC. First, upon review of the record, the Court finds that it does not contain any reference to Chiari malformation until after the date last insured, December 31, 2017. The record shows that the ALJ correctly noted that the CT scan of Griffith's brain from October 23, 2017, did not show any signs of Chiari malformation. (Doc. 9-8, at 618). Rather, the CT scan of her head showed a 1.7 cm peripherally clarified pineal cyst and Griffith was discharged from the emergency room after her headache improved. (Doc. 9-2, at 21; Doc. 9-8, at 614). Griffith underwent surgery for a Chiari malformation, specifically a suboccipital craniectomy with Chiari decompression and bovine pericardium dural graft in May 2018. (Doc. 9-7, at 669). Griffith underwent a second surgery in July 2018 to treat eosinophilic meningitis with staph and bovine dural graft infection, as well as replacement of dural graft and repair of pseudo-meningocele and closure. (Doc. 9-7, at 669). When evaluated by neurosurgery in 2019, Griffith had no concerns and it was recommended that she follow up in six months. (Doc. 9-7, at 669).

At the administrative hearing, the ALJ clarified that the Chiari malformation diagnosis and surgeries took place after the date last insured. (Doc. 9-2, at 66). Counsel for Griffith confirmed that Griffith was treated after the date last insured. (Doc. 9-2, at 66-67). In

response, the ALJ noted that since he gave Griffith two weeks after the hearing to get additional records into the file, the ALJ asked Griffith's counsel to go through the record and send a letter to the ALJ if counsel found evidence showing a diagnosis, imaging, or other treatment for Chiari malformation prior to the expiration of the date last insured. (Doc. 9-2, at 67). Later, when examining Griffith, the ALJ asked Griffith why she would not have been able to work in 2017. (Doc. 9-2, at 77). In response, Griffith stated:

> My back injury, which then I have stenosis and I had lower back pain that would -- the pain would go down both legs, front and back, and I was manifesting Chiari Malformation symptoms, severe headaches, tripping and falling, and I did have an MRI, which we do not have the records yet, that they -- they were checking for brain aneurysms because aneurysms do run in my family. I had several great aunts and cousins. And then that first MRI did not show anything, but then they ordered an MRI specific to brain aneurysms and then an MRI on my cervical and thoracic back and that when's the MRA manifest[ed] or they found that GRA in there, but I had been manifesting symptoms all through 2017.

(Doc. 9-2, at 77).

In addition, when describing her Chiari malformation symptoms, Griffith stated she had numbness and tingling in her hands, and would need to stop using her arms after ten to twenty minutes of using them or else they would spasm. (Doc. 9-2, at 80). When asked to explain when she started experiencing headaches and whether treatment was sought, Griffith stated:

> Unfortunately, what happened was [Griffith] had a temporary doctor at the VA and the MRI – [Griffith] had the MRI done, like [Griffith] said, and then [Griffith] didn't get the results. [Griffith] called there and finally got an appointment for the results and then the second doctor ordered the MRA and the MRI on [her] cervical and thoracic spine and the Chiari was found and [Griffith] was sent to neurosurgery, but [Griffith] was diagnosed – [Griffith] had [her] surgical consultation May 21, 2018, and the VA does not move very quick, as we know, but [Griffith] actually was going to be operated on May 29, 2018, because they thought it was just so severe.

(Doc. 9-2, at 81).

14

In the decision, the ALJ noted that Griffith alleged disability due to, among other things, a Chiari malformation. (Doc. 9-2, at 20). However, upon reviewing the record, the ALJ found that "there is no evidence in the medical records in 2017 to support these claims. [Griffith] was diagnosed with Chiari malformation after her date last insured." (Doc. 9-2, at 20). The ALJ noted that when Griffith was seen in the Emergency Department for complaints of ongoing intermittent headaches for the last 5-6 weeks on October 23, 2017, a CT scan of her head showed a 1.7 cm peripherally clarified pineal cyst. (Doc. 9-2, at 21; Doc. 9-8, at 618). Griffith's headache improved and she was discharged from the emergency room. (Doc. 9-2, at 21; Doc. 9-8, at 614). Regarding the medical source statement by Dr. Ackley, the ALJ found the opinion not persuasive because Dr. Ackley refers to Chiari malformation and empyema of lungs as contributing to his opined limitations, yet "these diagnoses were not present during the relevant period." (Doc. 9-2, at 23).

Next, concerning the empyema, the record reflects that Griffith was only treated for emphysema in September 2019. (Doc. 9-7, at 347). However, there is no further mention of emphysema in the record beforehand apart from a notation from November 2018 related to Griffith's lungs that "[p]rominent pre-sternal aeration maybe related to mild emphysema or expiratory effort," a notation from September 2019 stating "[i]mproving subcutaneous emphysema along the right chest wall," and a notation from November 2019 that Griffith "has a history of COPD." (Doc. 9-7, at 347, 396-97, 531). In December 2019, Griffith denied ever having pulmonary function testing, although she was taking Symbicort twice daily and albuterol as needed, usually about twice per day. (Doc. 9-8, at 575). Griffith also denied any shortness of breath with her usual activities and reported that she had smoked two packs of

cigarettes per day since age 12, but she had already reduced her smoking to half a pack per day. (Doc. 9-8, at 575). State agency physicians, Catherine Smith, M.D., and Louis B. Bonita, M.D., opined that Griffith must avoid concentrated exposure to pulmonary and respiratory irritants. (Doc. 9-3, at 31-32, 44-45).

At the administrative hearing, in the first hypothetical question posed to the vocational expert to determine whether there would be jobs that Griffith can perform, the ALJ included that "[t]his individual can tolerate occasional exposure to vibrations and potential pulmonary and respirations, such as strong fumes, noxious odors, concentrated dust and gases, and work environments with poor ventilation." (Doc. 9-2, at 89). In response, the vocational expert stated that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. (Doc. 9-2, at 90). In the decision, the ALJ specifically considered Griffith's COPD to be severe, but found that it did not meet or medically equal the severity of Social Security listing 3.02, which pertains to chronic respiratory disorders. (Doc. 9-2, at 16-17). In the RFC, the ALJ found that Griffith was capable to perform light work subject to non-exertional limitations, including occasional exposure to potential pulmonary and respiratory irritants such as strong fumes, noxious odors, concentrated dust and gasses, and work environmental with poor ventilation. (Doc. 9-2, at 19). As such, the Court finds that the ALJ sufficiently accounted for Griffith's emphysema. *See Rutherford*, 399 F.3d at 554.

Upon consideration of the ALJ's decision, the Court finds that substantial evidence supports the ALJ's evaluation of the cumulative effects of Griffith's Chiari malformation and emphysema in formulating the RFC. The Court notes again that "[t]he ALJ – not treating or

examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Moreover, the ALJ's evidentiary evaluation was supported by substantial evidence; that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To the extent that Griffith asks the Court to reweigh the evidence and arrive at a different conclusion, courts "are not permitted to re-weigh the evidence or impose their own those factual determinations" in reviewing disability appeals. *Chandler*, 667 F.3d at 359.

Accordingly, the Court finds that substantial evidence supports the ALJ's evaluation of Griffith's Chiari malformation and emphysema.

C.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION OF THE MEDICAL OPINION OF DR. ACKLEY.

Finally, Griffith contends that the ALJ committed reversible error in failing to provide any explanation for his rejection of the opinions of Dr. Ackley, who opined Griffith was more limited than found by the ALJ. (Doc. 10, at 7). In addition, Griffith avers that "[t]he testimony of Dr. Ackley needed to be investigated more to indicate if the limitations placed on [Griffith] in his Medical Source Statement were effective on the date last insured. This could have been done by interrogatories." (Doc. 10, at 9-10). In opposition, the Commissioner maintains it was Griffith's responsibility to submit evidence demonstrating that she was disabled before December 31, 2017, and the ALJ did not fail in his duty to develop the record because "[Griffith]'s argument admits that the June 2020 opinion is well beyond her insured status period, and her Brief fails to demonstrate that the evidence from July 2020 related to the period on or before December 31, 2017." (Doc. 16, at 18-19).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinion of Dr. Ackley.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were

improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

SSR 96-6p addresses the weight afforded to treating medical sources, such as Dr. Ackley. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Because treating sources often have the closest ties to a claimant, their opinions are generally entitled to more weight. 20 C.F.R. §

404.1527(c)(2). Under certain circumstances, the medical opinion of a treating source may even be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 at *1. A treating physician's opinion warrants controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, a treating source's opinion may be rejected "only on the basis of contradictory medical evidence . . . ." *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). Thus, even if a treating source's medical opinion is not entitled to controlling weight, it still may be entitled to significant deference. SSR 96-2p, 1996 WL 374188 at *4.

Upon establishing that a treating source's opinion is not entitled to controlling weight, an ALJ must weigh the opinion "using all of the factors provided in 20 CFR 404.1527," which are also used for evaluating opinions by non-treating and non-examining medical sources. SSR 96-2p, 1996 WL 374188 at *4. These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 404.1527(c); *see also* SSR 96-6p, 1996 WL 374180 at *2 ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). Further, 20 C.F.R. § 404.1527(c)(2) requires that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." *See also Cotter,* 642 F.2d at 704 (Finding the ALJ's articulation of the weight accorded to each medical

opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason,* 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). As such, to allow for meaningful judicial review, it is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer*, 186 F.3d at 429; *Burnett*, 220 F.3d at 119.

On July 27, 2020, Dr. Ackley completed a medical source statement. (Doc. 9-8, at 369-73). Dr. Ackley opined that Griffith could lift and carry ten pounds occasionally; sit two hours; stand one hour and walk one hour in an eight-hour workday; occasionally use her right and left hands to reach overhead; reach in all other directions; and handle, finger, feel, push, and/or pull. (Doc. 9-8, at 368-70). Dr. Ackley further opined that Griffith can occasionally use her feet for the operation of foot controls; never climb stairs, ramps, ladders, or scaffolds; never balance, stoop, kneel, crouch, and crawl; never have exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dusts, odors, fumes, pulmonary irritants, extreme cold, extreme heat and vibrations. (Doc. 9-8, at 370-72). Lastly, Dr. Ackley opined that Griffith requires a quiet noise level, is able to do self-care; is unable to do long travel unaided, needs assistance for shopping, can never use standard public transportation, and requires frequent rest and naps. (Doc. 9-8, at 372-73). Upon consideration, the ALJ found that Dr. Ackley's opinion is not persuasive because it "was rendered in July 2020, well after the date last insured." (Doc. 9-2, at 23). The ALJ explained that "Dr. Ackley refers to Chiari malformation and empyema of lungs as contributing to the limitations, however, these diagnoses were not present during the relevant period." (Doc. 9-2, at 23).

Griffith alleges the ALJ erroneously ignored Dr. Ackley's medical source statement based on the fact that the Chiari malformation surgery was not conducted until after the date last insured, December 31, 2017, and her surgeries were on May 29, 2018, and July 10, 2018. (Doc. 10, at 7). The Court concludes that: the ALJ did not err in considering the fact that Dr. Ackley's opinion was rendered after Griffith's date last insured; the ALJ's decision to assign little weight to Dr. Hoffman's opinion was supported by substantial evidence; and the ALJ adequately explained his reasons for his decision.

First, regarding her argument that the ALJ erred in discounting Dr. Ackley's opinion rendered after her date last insured, the Court finds that this contention does not warrant review. Medical evidence relating to Griffith's condition after the date last insured has been held to be "irrelevant" because a claimant must prove disability in the relevant time period: he must show that he was disabled between her alleged onset date and her date last insured. *See, e.g.*, *Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 197 (3d Cir. 2007) (holding that the ALJ need not consider medical evidence "after [the] last insured date"); *Matullo v. Bowen*, 926 F.2d 240, 245-46 (3d Cir. 1990) (stating that evidence relating to treatment after date last insured is not relevant to the question of whether the claimant has established that she was under disability prior to expiration of her date last insured); *Hyler v. Colvin*, No. 12-4974, 2013 WL 3766817, at *9 (E.D. Pa. July 18, 2013) ("The relevant time period that the ALJ in this case must consider is whether plaintiff was disabled for DIB purposes at any time between plaintiff's alleged onset date . . ., and the date plaintiff was last insured . . . . Evidence related to plaintiff's condition after the date last insured is irrelevant.").

22

Contrary to Griffith's assertion, the ALJ appropriately considered the fact that Dr. Ackley's July 27, 2020, opinion was rendered after Griffith's date last insured of December 31, 2017. *See Cardinal v. Colvin*, No. 14-1368, 2016 WL 1237783, at * 5 (E.D. Pa. Mar. 30, 2016) (concluding that ALJ's decision to afford little weight to medical opinions post-dating plaintiff's date last insured was proper). Griffith cites no legal authority for the contention that the ALJ could not consider this fact when weighing the opinion. As noted in 20 C.F.R. § 404.1527(c)(6), an ALJ may consider "any other relevant factors" when deciding how much weight to afford a medical opinion. The "irrelevancy" of evidence post-dating Plaintiff's date last insured, *see Ortega*, 232 F. App'x at 197, would be a "relevant factor[ ]" to consider when weighing the medical opinion. *See* 20 C.F.R. § 404.1527(c)(6).

Therefore, the Court finds that the ALJ did not err when he considered the fact that Dr. Ackley's opinion was rendered after Griffith's date last insured when determining what weight to afford the opinion. Griffith puts forward no evidence to show that Dr. Ackley's opinion is related to the relevant time period, and cites no law for the apparent contention that the ALJ could not consider the fact that this opinion post-dates Griffith's date of last insured. Moreover, as discussed in the section immediately following, the ALJ considered this fact in conjunction with "contradictory medical evidence record," and his decision to find the opinion not persuasive is supported by substantial evidence. *Plummer*, 186 F.3d at 429. In addition, the ALJ adequately explained his reasons for doing so, and substantial evidence supports the ALJ's determination. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Burnett*, 220 F.3d at 119-20. Specifically, as the ALJ explained, in addition to the fact that Dr. Ackley's July 27, 2020, opinion was rendered after Griffith's date last insured,

the ALJ also noted that the opinion was contradicted by Griffith's own reported activities, and was inconsistent with other "contradictory medical evidence record." (Doc. 9-2, at 17, 23); *Plummer*, 186 F.3d at 429.

Secondly, the Court finds that the ALJ was under no obligation to recontact Dr. Ackley for clarification or further develop the record "by interrogatories." (Doc. 10, at 9-10). The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), and 20 C.F.R. § 404.1512(a)). "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." *Kenyon v. Colvin*, No. 3:12-CV-1812, 2013 WL 6628057 (M.D. Pa. Dec. 16, 2013). "The decision to order a consultative examination is within the sound discretion of the ALJ." *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002). Under the regulations, the Commissioner "may" request a claimant to attend a consultative examination. 20 C.F.R. § 404.1512. The regulations authorize the ALJ to obtain a consultative examination if there remains information needed to make a disability determination, "such as clinical findings, laboratory tests, a diagnosis or a prognosis," which cannot be obtained from the medical record. 20 C.F.R. § 404.1519a. Such an examination may be requested when the Commissioner is not presented with the information that is necessary to make a decision or is presented with inconsistent information. 20 C.F.R. § 404.1519a(a)-(b). If the inconsistency or lack of information does not allow the Commissioner to make a decision, the Commissioner may take follow-up steps to develop the record,

24

including by re-contacting a medical source. 20 C.F.R. § 404.1519a(b)(2)(i); *see also Swink v. Saul*, 931 F.3d 765, 770–771 (8th Cir. 2019); 20 C.F.R. § 404.1519a.

In *Herring v. Colvin*, the plaintiff "points to the types of things that the ALJ did not do" as grounds for reversible error and the Court rejected this argument explaining:

> Plaintiff is conflating the two requirements for a remand based on failure to develop the record. An ALJ must have failed to develop the record, and prejudice must be shown . . . . Plaintiff has failed to proffer or describe any additional evidence the ALJ should have considered and has failed to make any new argument based on existing evidence.

> *Herring v. Colvin*, 181 F. Supp. 3d 258, 269 (M.D. Pa. 2014).

Similar to the facts in *Herring v. Colvin*, Griffith fails to direct the Court to any contradictions or omissions in the record pertaining to the relevant disability date which would require the ALJ to request additional medical opinions, and failed to provide additional evidence or new arguments that would change the outcome of the case. With testimonial evidence, medical opinions, and submitted medical history, the ALJ was presented with sufficient information to make a decision and acted properly within the scope of his discretion by not ordering consultative examinations or attempting to obtain interrogatories that Griffith could also have obtained. *See* 20 C.F.R. §§ 404.1512, 404.1519a; *Thompson*, 45 F. App'x at 149; *Streeter v. Colvin*, No. 3:12-CV-267, 2013 WL 5888088, at *4 (M.D. Pa. Oct. 31, 2013); *see also Swink*, 931 F.3d at 770–771; *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) ("The ALJ is not required to order such [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient."); *Herring*, 181 F. Supp. 3d at 269-72.

Moreover, under the agency's regulations, an ALJ may exercise his or her *discretion* to recontact a medical source if that is the most effective and efficient way to resolve an

evidentiary inconsistency or insufficiency that precludes him or her from making a disability determination. *See* 20 C.F.R. § 404.1520b(b)(2); *see also Bryson v. Comm'r Soc. Sec.*, 639 Fed. App'x 784, 787 n.8 (3d Cir. 2016) (noting that, although a prior iteration of the regulations required an ALJ to recontact a medical source under certain circumstances, the rule was changed in 2012 to make recontacting a medical source discretionary); *Ross v. Colvin*, Civil No. 1:14-0990, 2015 WL 1636132, at *9 n.4 (M.D. Pa. Apr. 8, 2015). The Court finds no abuse of discretion here as, for the reasons given above, the ALJ had substantial evidence to support a disability determination. To the extent that Griffith asks the Court to reweigh the evidence and arrive at a different conclusion, courts "are not permitted to re-weigh the evidence or impose their own those factual determinations" in reviewing disability appeals. *Chandler*, 667 F.3d at 359.

Accordingly, the Court finds that the ALJ's evaluation of the medical opinion of Dr. Ackley is supported by substantial evidence and was reached based upon a correct application of the relevant law.

V.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Griffith's application for disability benefits is **AFFIRMED**, final judgment is entered in favor of the Commissioner and against Griffith, and the Clerk of Court is directed to **CLOSE** this case.

**Dated: March 20, 2023**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**